## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA ANN WOODRUFF,
Administratrix of the Estate of Jonathan
Alan Woodruff and DEBRA ANN
WOODRUFF, Individually,

       Plaintiff,

          v.

SULLIVAN COUNTY RURAL
ELECTRIC COOPERATIVE, INC.,
COMMONWEALTH TELEPHONE
COMPANY, COMMONWEALTH
TELEPHONE ENTERPRISES, INC.,
EPIX INTERNET SERVICES,
COMMONWEALTH
COMMUNICATIONS, and HENKELS &
MCCOY, INC,

       Defendants.

CIVIL ACTION No. 3:07-CV-1697

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are two (2) Motions to Dismiss Plaintiff Debra Ann Woodruff's Complaint (Doc. 1) or in the Alternative, to Dismiss Claims for Punitive Damages, filed by Defendant Henkels & McCoy, Inc. (Doc. 12) and by Defendants Commonwealth Communications, Commonwealth Telephone Company, Commonwealth Telephone Enterprises, Inc., and Epix Internet Services (Doc. 20). Because Plaintiff's Complaint states a claim of negligence upon which relief can be granted against moving Defendants, but because she does not state a claim to punitive damages, Defendants' motions will be granted in part and denied in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

Plaintiff Debra Ann Woodruff ("Woodruff") is a resident of New York, as was her decedent, Jonathan Alan Woodruff.  (Compl., Doc. 1 ¶¶ 1-2.)  Plaintiff alleges that all Defendants have principal places of business in Pennsylvania. (*Id.* ¶¶ 4-13.)  Plaintiff also alleges the following: Commonwealth Telephone Enterprises ("CTE") is a telecommunications company; Commonwealth Telephone Company ("CT") is one of CTE's primary operating segments and is a local exchange carrier in rural Pensylvania; Epix Internet Services ("Epix") is a support business under CTE providing rural dial-up internet services; and Commonwealth Communications ("CC") is a subsidiary of CTE and a provider of telecommunications equipment and facilities management services. (*Id.* ¶¶ 8-11.)  Defendants CTE, CT, Epix, and CC, which provide telecommunications services to residential and commercial entities within Pennsylvania, were in the process of running communications wires, using the electric distribution poles owned by Defendant Sullivan County Rural Electric Cooperative ("REC"). (*Id.* ¶¶ 12, 14.)  In this work, they hired Defendant Henkels & McCoy as the subcontractor. (*Id.* ¶ 13.)

Plaintiff's decedent, Jonathan Woodruff, was an employee of Whittaker Communications, a subcontractor hired to perform work on certain telephone lines located between six (6) and nine (9) feet below the electric distribution lines, and Splice On Communications is the successor in interest to Whittaker Communications.  (*Id.* ¶¶ 15-16.)  Pursuant to certain joint use pole agreements, Jonathan Woodruff, as a Whittaker employee, had permission to run telephone wires on the electric distribution poles owned by REC.  (*Id.* ¶ 17.)

On September 26, 2005, at approximately 2:45 p.m., Plaintiff's decedent was in the bucket of a utility truck working on telephone communication wires between the poles, six (6) to nine (9) feet below the energized power line owned by REC, when "facilities and equipment and wires on the power pole suddenly and without warning arced, electrocuting Decedent," and causing him fatal injuries. (*Id.* ¶¶ 18-19.)

Plaintiff brought this suit against all the moving Defendants for common law negligence (Count II) and wrongful death pursuant to 42 Pa. Cons. Stat. Ann. § 8301 and Pa. R. Civ. P. No. 2202(a) (Count IV), and against all moving Defendants except Defendant CC, a Survival Action pursuant to 20 Pa. Cons. Stat. Ann. § 3373 and 42 Pa. Cons. Stat. Ann. § 8302 for damages suffered by decedent, Plaintiff, and decedent's children as a result of the Defendants' alleged negligence (Count III).  (*Id.* ¶¶ 34-60.) Defendants CTE, CT, Epix, CC, and Henkels & McCoy filed motions to dismiss these claims, or in the alternative, to dismiss the claims against them for punitive damages. (Docs. 12 & 20.)  These motions are fully briefed and ripe for disposition.


**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable

expectation that discovery will reveal evidence of" each necessary element.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v.*

4

*Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will

ultimately prevail.  *See id.*  The defendant bears the burden of establishing that the

plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould*

*Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).


## DISCUSSION

### I. Plaintiff's Allegations of Negligence

All of Plaintiff's claims against the moving Defendants sound in negligence.  To

state a claim of negligence, Plaintiff must allege (1) a duty owed by the Defendants to

decedent, (2) a breach of that duty by Defendants, (3) that the breach was the proximate

cause of the harm suffered, and (4) that the damages suffered were a direct result of the

harm.  *See Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1070 (Pa.

2006).  Plaintiff's allegations of the moving Defendants' negligence are as follows:


#### A. Allegations of Duty

Plaintiff alleges that the moving Defendants are governed by the National

Electrical Safety Code ("NESC" or "code") because their work is on lines which run on

power poles.  (Compl., Doc. 1 ¶¶ 35-38.)  The code, Plaintiff claims, requires these

Defendants to maintain and inspect telephone lines and equipment to ensure the safety

of the public and of those who work on the lines. (*Id.* ¶ 37.)  Specifically, the Defendants

owed Decedent a duty to ensure that NESC standards were met. (*Id.* ¶ 38.)  One such

standard requires that "devices that are intended to interrupt fault currents shall be

5

capable of safely interrupting the maximum short-circuit current they are intended to interrupt while detecting the minimum fault current and interrupting it promptly, and for the circumstances under which they are designed to operate." (*Id.* ¶ 39.)  The moving Defendants also owed Decedent a duty to investigate and where appropriate, remedy any defects, to ensure that the equipment, poles, and lines either used by REC or attached to REC power poles, as well as the area surrounding this equipment, these lines, and these poles, posed no danger to Decedent. (*Id.* ¶¶ 37-41.)


### B. Allegations of Breach and Causation

Plaintiff alleges that the moving Defendants breached these duties of care, thereby creating an unreasonable risk of harm to Decedent, by (1) failing "to properly insure that facilities used for their telecommunication lines did not induce neutral to earth potential difference and step and touch potential which caused electrical current, killing the decedent"; (2) failing to "properly ground the telecommunication lines and/or system in accordance with the [NESC], Rural Utilities Service Standards and USDA standards and customary industry standards"; (3) failing to "insure proper bonding and/or associated grounding between its telecommunication system and the electrical system"; (4) failing to "assure that the public and/or contractors would not come in contact with its facilities located on the telecommunications system and/or electric distribution system and/or did not assure that such facilities were safe and not subject to high potential and dangerous voltage that could injure or kill"; (5) having "defective lines and equipment on its telecommunications system and/or electric distribution system, including but not

6

necessarily limited to switches and capacitors which contributed to excessive voltage and current in the grounding system that resulted in the fatality of Mr. Woodruff"; and (6) because the "telecommunications system was not designed, constructed and/or maintained in compliance with NESC and other industry standards thereby allowing dangerous voltage potential and current to be imposed on telecommunications workers through the pole down ground and other electric facilities on the pole taht may be reasonably expected to be contacted by the public and a telecommunication's company worker." (*Id.* ¶ 42.) Plaintiff alleges that these acts and omissions of the moving Defendants were a foreseeable, direct, and proximate cause of Decedent's injuries. (*Id.* ¶ 43.)

### C. Allegations of Damages

Plaintiff alleges that Jonathan Woodruff "sustained, prior to his death on September 26, 2005, severe personal injuries, physical and mental pain and suffering, and trauma." (*Id.* ¶ 20.) Prior to this accident, Decedent was "generally in good health, sound physical condition, industrious and in possession of all his faculties and was gainfully employed." (*Id.* ¶ 23.) Plaintiff also alleges other damages suffered by herself and by Decedent's children as a result of the accident. (*Id.* ¶¶ 47-53, 58-59.)

## II. Defendants' Motions to Dismiss

### A. "Factual Disconnect" in Allegations of Causation

The thrust of all the moving Defendants' motions to dismiss is that there is a "factual disconnect between the allegations of electrocution of the actual mechanism of the electrocution." (Def. Henkles & McCoy's Mot. to Dismiss, Doc. 12, at 5; Br. in Supp. of Commonwealth Defs.' Mot. to Dismiss, Doc. 21, at 4.) Specifically, they state that telecommunications lines are not energized, and that Plaintiff has not alleged that they are. (Doc. 12, at 5; Doc. 21, at 4.) Because Plaintiff has not alleged "how a telecommunications line could become energized and therefore even potentially cause the alleged electrocution of the Plaintiff's decedent, ... Plaintiffs are left claiming that a non-energized telecommunication line was involved in this incident." (Doc. 12, at 5; Doc. 21, at 4.) Because Plaintiff has alleged only that the moving Defendants used the poles but not that they accessed the electricity or the electric lines, Defendants argue, "Plaintiffs have failed to allege any factual support for the claim that [the moving Defendants'] negligence caused the electrocution, which must involve electricity." (Doc. 12, at 5; Doc. 21, at 4.)

However, an allegation that the telecommunications lines themselves were energized, or that the moving Defendants actually accessed the electricity or the electric lines, is not essential to Plaintiff's claim. Indeed, Plaintiff claimed that the moving Defendants breached a duty to exercise care, consistent with the National Electrical Safety Code and industry standards, to ensure that the lines and equipment attached to the REC power poles, *and the surrounding area*, were safe. (Compl. Doc. 1 ¶ 41.)

Plaintiff has alleged that Decedent was electrocuted by an arc of electricity.  (*Id*. ¶ 18.)

This allegation does not depend on any claim that the telecommunications lines

themselves were energized, because an arc of electricity, for example coming from the

power lines above the telecommunications lines or perhaps from other equipment located

on the poles, can electrocute a person who is simply near, but not in contract with, the

source of the electricity.  *See, e.g.*, *Books v. Pa. Power & Light Co.*, 523 A.2d 794, 799

(Pa. Super. Ct. 1987) (overturning grant of summary judgment to manufacturers of

dumping equipment that the plaintiff was using near power lines because a genuine issue

of fact existed as to whether plaintiff would have acted differently if he had been warned

of the danger of electrocution resulting not only from contact with power lines, but from

operating the trailer near power lines).  Defendants' arguments present factual questions

rather than legal ones, and thus do not justify dismissal of Plaintiff's claims.


### B. Henkels & McCoy's Duty to Plaintiff

Additionally, Defendant Henkels & McCoy raises another argument in its Reply

Brief.  There, Henkels & McCoy states that in Plaintiff's opposition brief, she alleges for

the first time that her decedent was "performing work for" Henkels & McCoy at the time of

the incident.  (Reply Br., Doc. 18, at 1.)  Plaintiff's argument that Henkels & McCoy owed

a "special duty" to Plaintiff's decedent is "based solely and entirely upon this assertion,"

Defendant argues. (*Id*.)  Henkels & McCoy argues that because Plaintiff did not raise this

allegation in her Complaint, and because the Complaint states that Decedent was an

employee of Whittaker Communications, she has abandoned any claim that Decedent

was "performing work for" Henkels & McCoy, and dismissal is therefore appropriate.

This argument fails, however.  To begin, in reviewing a motion to dismiss, the Court must not only accept as true all factual allegations in the complaint, but must also "draw all reasonable inferences in favor of" the nonmoving party.  *E.g.*, *Trianco, LLC v. Int'l Bus. Machines Corp.*, No. 07-1095, 2008 WL 876355, at *2 (3d Cir. Apr. 2, 2008). Plaintiff's Complaint alleges that Henkels & McCoy "was *the* sub-contractor, contracted by Defendants CTE, CT, Epix and CC, who were in the process of running *the* communications wires wherein it was using the electric distribution poles owned by Defendant REC...."  (Compl., Doc. 1 ¶ 14) (emphasis added).  In the very next paragraph, she alleges that "Plaintiff's decedent was an employee of Whittaker Communications, *a* sub-contractor hired to perform work, on *certain* telephone lines ... below the electric distribution lines carrying electrical power and owned and maintained by Defendant REC."  (*Id.* ¶ 15) (emphasis added).   It is reasonable to infer from these allegations that Whittaker was a subcontractor of *the* larger subcontractor, Henkels & McCoy, hired to perform work on *certain* of the lines for which Henkels & McCoy was responsible. Plaintiff has not abandoned any allegation that Decedent was "performing work for" Henkels at the time of the accident.

This is not to say that the allegations in these paragraphs necessarily support an inference that Henkels and Plaintiff's decedent were in an employer-employee relationship.  But such an allegation is not essential to Plaintiff's claims that Henkels, and all other moving Defendants, owed her decedent a certain standard of care.  Plaintiff alleges that all moving Defendants owed a standard of care consistent with the NESC,

Rural Utilities Service Standards, USDA standards, and customary industry standards *to both employees and the public*, based on the simple fact that they performed work on lines which were located on power poles.  (Compl., Doc. 1 ¶¶ 37-41.)  Plaintiff specifically pled that all the moving Defendants owed duties of investigation into possible hazards to her decedent "*as a member of the general public* and as a telecommunications worker on the power pole."  (*Id.* ¶ 40) (emphasis added).

Neither Henkels nor the other moving Defendants have put forth arguments disputing Plaintiff's allegations that they owed a duty to Decedent in his role as a member of the public, or in his role as a person, whether or not an employee, likely to be near their lines which were located on REC power poles.  The arguments the moving Defendants have made do not justify dismissal of Plaintiff's claims against them.  Plaintiff has put all Defendants on notice of the nature of her claims and the factual grounds on which those claims rest.  Therefore, she is entitled to put forth evidence in support of those claims.

### III. Allegations Do Not Support Claims for Punitive Damages

All moving Defendants argue that Plaintiff's allegations do not support a claim for punitive damages.  Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  *Hutchinson ex rel. Hutchinson v. Luddy*, 896 A.2d 1260, 1265 (Pa. Super. Ct. 2006).  Punitive damages "are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless

11

conduct. ... [T]he state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious."  *Id.* (internal quotation marks omitted.)  Punitive damages are available only if "the defendant's acts amounted to intentional, willful, wanton or reckless conduct."  *Phillips v. Cricket Lighters*, 883 A.2d 439, 446 (Pa. 2005) (internal quotation marks omitted).

Plaintiff concedes that she "must plead additional facts in order to recover punitive damages," and that "[f]acts that establish only negligence, even gross negligence, are not sufficient."  (Pl.'s Mem. in Opp'n to Def. Henkels & McCoy Mot. to Dismiss, Doc. 17, at 5) (quoting *Shock v. T.J. Care, Inc.*, 65 Pa. D. & C. 4th 517 (2004)).  But Plaintiff argues that she "pleaded facts of recklessness by specifically stating that Defendants' actions "created an unreasonable risk of harm and danger to Plaintiff."  (*Id.* at 5.)  "The high risk of electrocution and/or death and the disregard for the safety of those working on the telecommunications lines is the type of reckless behavior for which punitive damages may be allocated," Plaintiff argues.  (*Id.* at 6.)

These allegations are not sufficient to state a claim to punitive damages.  Contrary to Plaintiff's suggestion, "[a] defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another *and such risk is substantially greater than that which is necessary to make his conduct negligent.*"  *Phillips*, 883 A.2d at 445 (internal quotation marks omitted) (emphasis added).  Because punitive damages under Pennsylvania law "are an extreme remedy, available in only the most exceptional matters," *id.*, and because Plaintiff's Complaint alleges only simple negligence, her claims to punitive damages against all moving Defendants will be dismissed.

**CONCLUSION**

Because Plaintiff's Complaint states a claim of negligence upon which relief can be granted against moving Defendants, I will deny their motions to dismiss her claims in their entirety.  But because Plaintiff does not state a claim to punitive damages, I will dismiss her claims for punitive damages against the moving Defendants.  All claims against the nonmoving Defendant, Sullivan County Rural Electric Cooperative, Inc., remain in the case.

An appropriate order follows.

April 25, 2008                             /s/ A. Richard Caputo     
Date                                     A. Richard Caputo
                                            United States District Judge

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DEBRA ANN WOODRUFF,
Administratrix of the Estate of Jonathan
Alan Woodruff and DEBRA ANN
WOODRUFF, Individually,

     Plaintiff

     v.

SULLIVAN COUNTY RURAL
ELECTRIC COOPERATIVE, INC.,
COMMONWEALTH TELEPHONE
COMPANY, COMMONWEALTH
TELEPHONE ENTERPRISES, INC.,
EPIX INTERNET SERVICES,
COMMONWEALTH
COMMUNICATIONS, and HENKELS &
MCCOY, INC,

     Defendants.

CIVIL ACTION No. 3:07-CV-1697

(JUDGE CAPUTO)

**ORDER**

     Now, this   25th   day of April, 2008, it is **HEREBY ORDERED** that Defendants'

motions to dismiss, or in the alternative, to dismiss claims for punitive damages (Docs. 12

& 20) are **GRANTED** in part and **DENIED** in part, as follows:

     (1)    Defendants Commonwealth Communications, Commonwealth Telephone

           Company, Commonwealth Telephone Enterprises, Inc., and Epix Internet

           Services' (Doc. 20) and Defendant Henkels & McCoy, Inc.'s (Doc. 12)

           Motions to Dismiss Plaintiff's Complaint are **DENIED**.

     (2)     Defendants Commonwealth Communications, Commonwealth Telephone

           Company, Commonwealth Telephone Enterprises, Inc., and Epix Internet

Services' (Doc. 20) and Defendant Henkels & McCoy, Inc.'s (Doc. 12)

Motions to Dismiss Claims to Punitive Damages are **GRANTED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge